UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 06-61890-CIV-HUCK/SIMONTON

JEAN-GUY LEBEL,

    Plaintiff,

vs.

RAMPAGE SPORT FISHING YACHTS,

    Defendant.

_____/

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

    This cause is before the Court on Defendant Rampage Sport Fishing Yachts' Motion for Summary Judgment, filed April 11, 2007 [DE # 18]. The Court has reviewed the Motion and Plaintiff's Response thereto. Defendant did not file a Reply in further support of its Motion. The Court is duly advised in the premises.

## Background

    On March 24, 2004, Plaintiff purchased a boat manufactured by Defendant from Sun Power Diesel and Marine, a dealer in Dania Beach, Florida (the "Sun Power").[1] Defendant expressly warranted the boat to be free from manufacturing and material defects for one year from the date of purchase. Plaintiff alleges that, as early as October 31, 2004 and on other occasions thereafter, he notified either Defendant or its authorized dealer, Sun Power, of leaks in the boat and problems with the boat's electrical system and interior trim. According to Plaintiff, Defendant failed to timely repair these defects and he was forced to file suit.

    By his Amended Complaint, Plaintiff asserts causes of action against Defendant for

---

[1] Although in his Response to the Motion for Summary Judgment, Plaintiff notes the sale date as January 5, 2004, the Amended Complaint and documents attached to the instant Motion and Plaintiff's Response reflect the correct sale date of March 24, 2004.

1

Defendant's alleged breach breach of its written warranty on the boat, pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*. (Count I); and for Defendant's allegedly false representations that it would repair the boat within a reasonable time under the warranty, that the boat was fit for its intended use, and that the boat was merchantable, pursuant to Florida's Deceptive and Unfair Trade Practices Act ("FDUPTA")(Count II). Additionally in support of his FDUPTA claim, Plaintiff alleges that Defendant violated Florida's Lemon Law, §501.24, Florida Statutes.

Defendant seeks summary judgment on Plaintiff's federal breach of written warranty claim because, according to Defendant, Plaintiff has not established and cannot establish that the boat was defective at the time of sale. Additionally, Defendant seeks dismissal of Plaintiff's breach of an written warranty claim because it was not given sufficient notice of the alleged defects and an opportunity to cure the same. Defendant seeks summary judgment on Plaintiff's FDUPTA claim because, in Defendant's view, such a claim cannot be premised on a breach of implied warranties of merchantability or fitness for a particular purpose where the parties are not in privity. Defendant additionally seeks summary judgment on Plaintiff's FDUPTA claim insofar as it is based on the application of Florida's Motor Vehicle Warranty Enforcement Act, also known as the "Lemon Law" because that law does not apply to boats. Finally, Defendant seeks summary judgment on both of Plaintiff's Counts because all of the alleged defects have, in fact, been repaired.

**Summary Judgment Standard**

Summary judgment is appropriate if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue of fact is "material" if it is a legal element of the claim under applicable substantive law which might affect the outcome of the case. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Allen,* 121 F.3d at 646. On a motion for summary judgment, the Court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the non-moving party, and determine whether that evidence could reasonably sustain a jury verdict. *Celotex*, 477 U.S. at 322-23; *Allen,* 121 F.3d at 646.

While the burden on the movant is great, the opposing party has a duty to present affirmative evidence in order to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 252. A mere "scintilla" of evidence in favor of the non-moving party, or evidence that is merely colorable or not significantly probative is not enough. *Id.*; *see also Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996) (conclusory allegations and conjecture cannot be the basis for denying summary judgment). With the foregoing standard in mind, the Court consider's Defendant's Motion for Summary Judgment as it relates to each Count.

### Count I - Magnuson-Moss Warranty Act

Plaintiff's first claim is that Defendant violated the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, by failing to comply with its obligations under the written warranty covering Plaintiff's boat. The Act provides consumers who are harmed by a warrantor's failure to comply with any obligation under a written warranty the right to file a civil action for damages. *See* 15 U.S.C. § 2310. Although the written warranty at issue here is not present in the record, the parties appear to agree that Defendant issued such a warranty and that it provided that the boat would be free from manufacturing and materials defects for one year from the time of sale.

Defendant argues that it is entitled to summary judgment on Plaintiff's claim because Plaintiff has no way of proving that the boat was defective at the time he purchased it. Defendant makes much of the fact that Plaintiff did not have a marine surveyor inspect the boat at the time of the sale, and that Plaintiff had the dealer, Sun Power, install several pieces of equipment (a generator, an air conditioning system, and an anchor windlass) on the boat after the sale, but before he accepted delivery of the boat. Such installation of after-market equipment, Defendant argues, could have caused the defects of which Plaintiff complains.

Whether the boat was defective when it was sold to Plaintiff is purely a question of fact. Plaintiff was not obligated to inspect the boat for defects prior to taking possession of the boat. He argues that he chose instead to rely on Defendant's express warranty that the boat was free of defects. While Defendant may be correct in arguing that the defects of which Plaintiff complains were actually caused by the dealer's installation of additional equipment on the boat after the sale, that issue should be considered by the trier of fact, not by the Court on a motion for summary judgment.

3

Defendant's contrary argument notwithstanding, Plaintiff has presented sufficient evidence from which a jury could determine that defects existed at the time Plaintiff purchased the boat. Specifically, Plaintiff cites a Critical Systems checklist prepared by Defendant prior to the sale of the boat, which notes that issues existed at that time with regard to the boat's bilge pumps, windshield wipers and lights. *See* Pl.'s Opp. Memo., Exh. B.  Plaintiff also cites Sea Trial Data compiled by Defendant prior to the sale, which reflects issues with the boat's raw water system operation and baitwell, among other things. *See* Pl.'s Opp. Memo., Exh. C.

As for Defendant's argument that Plaintiff failed to provide it with sufficient notice and opportunity to cure the alleged defects, it also presents material questions of fact precluding summary judgment.  Defendant argues that Plaintiff first notified it of the alleged defects on January 14, 2006, and that it took measures to repair the boat within a few weeks of that date.  Plaintiff, however, argues that he had earlier notified the dealer, Sun Power, which Plaintiff believed was Defendant's agent.[2] Plaintiff further notes two attempts he made before January 14, 2006 to send complaint letters directly to Defendant via registered mail.  Plaintiff argues that Defendant rejected the letters. Although Defendant is correct in arguing that both the Magnuson-Moss Warranty Act and Florida law require that a warrantor be given reasonable notice and opportunity to cure, whether such reasonable notice and opportunity were given here are questions of fact for a jury to decide.

### Count II – Florida's Deceptive and Unfair Trade Practices Act

Defendant seeks summary judgment on Plaintiff's FDUPTA claim insofar as it is based on an alleged breach of implied warranties of merchantability or fitness because Plaintiff and Defendant are not in privity.  Defendant correctly notes that, under Florida law, a cause of action for breach of implied warranty of merchantability or fitness for a particular purpose cannot exist in the absence of privity. *Kramer v. Piper Aircraft Corporation*, 520 So.2d 37 (Fla.1988), *see also Cedars of Lebanon Hospital Corp. v. European X-Ray Distributors of America, Inc.*, 444 So.2d 1068 (Fla. 3d DCA 1984).  Whether privity exists between Plaintiff and Defendant here, however, is a question of fact

---

[2]Although Defendant cites Plaintiff's own deposition testimony to the effect that he understood the dealer, Sun Power, was not related to Defendant, elsewhere in the deposition Plaintiff notes that Sun Power had an "agency" to sell Defendant's boats. *See* Lebel Depo. at p. 19.

4

precluding summary judgment.

Privity is the connection or relationship which exists between two or more contracting parties. *Sumitomo Corp. of America v. M/V Saint Venture*, 683 F.Supp. 1361, 1369 (M.D.Fla.1988). Here, it is beyond dispute that privity exists between Plaintiff and the dealer, Sun Power. Plaintiff entered into a purchase sale agreement directly with Sun Power. However, whether Plaintiff and Defendant, the manufacturer, are in privity requires closer examination. *See Bland v. Freightliner*, 206 F.Supp.2d 1202 (M.D. Fla. 2002)(acknowledging that privity may exist between a manufacturer of vehicle and purchaser even though vehicle was not purchased directly from manufacturer, but instead from a dealer alleged to be the manufacturer's agent).

Plaintiff alleges in his Amended Complaint that Sun Power was Defendant's "Authorized Dealer." Furthermore, in his deposition testimony, Plaintiff expressed his belief that Sun Power acted as Defendant's agent in the sale and service of the boat. Although Defendant has cited other portions of Plaintiff's deposition testimony wherein Plaintiff expresses his understanding that Defendant and Sun Power were distinct entities, the question of whether an agency, in fact, existed between Defendant and Sun Power remains in dispute. Accordingly, summary judgment on Plaintiff's FDUPTA claim, insofar as it is based on Defendant's alleged breach of implied warranties of fitness and merchantability, is inappropriate. *See Foote v. Green Tree Acceptance, Inc.,* 597 So.2d 803 (Fla. 1st DCA 1991)(denying a manufacturer's motion for summary judgment based on a lack of privity between purchaser and manufacturer where purchaser claimed that dealer acted as the manufacturer's agent).

Defendant also seeks summary judgment on Plaintiff's FDUPTA claim insofar as it is based on Florida's Lemon Law. The Lemon Law requires the manufacturer of a "motor vehicle" or its authorized service agent to make such repairs as are necessary to conform the vehicle to its warranty, at no cost to the consumer, during the term of the warranty, and to repurchase a vehicle that cannot be repaired to conform to its warranty. *See* §§ 681.103 and 681.104, Fla. Stat. Defendant argues that the Lemon Law, does not apply to boats. The Court agrees.

The Lemon Law defines a "motor vehicle" as

> . . . a new vehicle, propelled by power other than muscular power, which is sold in this state to transport persons or property, and includes a recreational vehicle or a vehicle used as a demonstrator or leased vehicle if a manufacturer's warranty was

issued as a condition of sale, or the lessee is responsible for repairs, but does not include vehicles run only upon tracks, off-road vehicles, trucks over 10,000 pounds gross vehicle weight, motorcycles, mopeds, or the living facilities of recreational vehicles.[]. § 681.102(15), Fla. Stat.

Surprisingly, there is little guidance as to whether the foregoing definition includes a boat or other marine vessels. In the only reported opinion regarding the issue, a decision from the Middle District of Florida found that a boat *is* a "motor vehicle" for the purpose of Florida's Lemon Law. In *Brufsky v. Parker Marine Enters., Inc*., the court noted that "[t]here is nothing the definition of motor vehicles . . ., which indicates that the [l]egislature intended to exclude watercraft in its definition of motor vehicles." *See Brufsky*, No. 96-301-CIV-FTM-17(D), 1997 WL 158309, at *6 (M.D. Fla. Mar. 27, 1997) (Kovachevich, J.). The court additionally noted that, in 1992, the Legislature had amended the definition of motor vehicle to exclude the phrase "and is properly operated over the public streets and highways of this state," thus reflecting its intent to expand the scope of motor vehicles under the Lemon Law. *Id*.

This Court reaches a different conclusion than did the *Brufsky* court as to the meaning of "motor vehicle" contemplated by the legislature. Although the definition provided in § 681.102(15) can be read broadly to include a boat, such a reading does not appear consistent with either the plain meaning of the term "motor vehicle" or the operative portions of the Lemon Law, which provide remedies and procedures applicable to cars, trucks, recreational vehicles and the like – but not to boats.

The term "motor vehicle," as traditionally used, is not understood to include a boat. Webster's Third New International Dictionary, for example, defines "motor vehicle" as "an automotive vehicle not operated on rails; especially one with rubber tires for use on highways." The American Heritage College Dictionary (Third Ed.) similarly defines "motor vehicle" as "a self-propelled wheeled conveyance, such as a car or truck, that does not run on rails." It is this conception of a motor vehicle the legislature appears to have contemplated in crafting the Lemon Law.

As Defendant correctly notes, the procedures and remedies provided by the Lemon Law are incongruous with the nature of a boat. For example, in providing consumers the remedy of a full refund of the purchase price of a defective motor vehicle, the legislature included in such amount "any

6

allowance for a trade-in vehicle." The legislature defined such allowance as the retail price of the trade-in vehicle as reflected in either the "NADA Official Used Car Guide" or the "NADA Recreational Vehicle Appraisal Guide" in effect at the time of the trade-in. § 681.102(19), Fla. Stat. Neither of those publications by the National *Automobile* Dealers Association provides any information as to the value of motorboats.

Similarly, in establishing the repurchase price a warrantor must pay a consumer for a vehicle that cannot be repaired to conform to its warranty, the Lemon Law requires an assessment of a vehicle's value adjusted for use based on the vehicle's *mileage*.[3] § 681.104(2)(a), Fla. Stat. However, a boat's usage is not typically measured by the number of miles it has traveled, but instead by the number of *hours* the boat has been in operation. *See* Aff. of Ken Hayes, Ex. A to Mot. For Sum. Judg.[4] Defendant argues that the legislature's determination of "reasonable offset for use" as a function of miles traveled and not hours in operation is indicative of its intent to limit application of the Lemon Law to wheeled automotive vehicles. The Court agrees.

In view of the foregoing, the Court need not consider Defendant's argument that a boat is an "off-road vehicle" specifically excluded from the definition of a motor vehicle. The Court notes, however, that the exclusions from the definition of "motor vehicle" provided in the statute are indicative of what kinds of vehicles the legislature contemplated in crafting the Lemon Law. Each of the various vehicles excluded from the definition of motor vehicle – "off-road vehicles, trucks over 10,000 pounds gross vehicle weight, motorcycles [and] mopeds" – are themselves wheeled vehicles typically operated on land. The legislature did not see fit, nor was it necessary, to specifically exclude boats, or airplanes for that matter, because such vehicles are simply not "motor vehicles" as that term is commonly understood. Accordingly, the Court finds that Florida's Lemon Law does not apply to boats and, insofar as Plaintiff's FDUPTA claim is based on a violation of the Lemon Law, summary

---

[3]The statute defines "reasonable offset for use" as the number of *miles* attributable to a consumer up to the date of a settlement agreement or arbitration . . . multiplied by the purchase price of the vehicle and divided by 120,000, except in the case of a recreational vehicle, in which event it shall be divided by 60,000." §681.102(20), Fla. Stat.

[4]Plaintiff does not dispute the fact that a boat's usage is measured in hours and not miles traveled. Even absent the Affidavit of Ken Hayes, such fact is common knowledge.

7

judgment in favor of Defendant is appropriate.

Finally, Defendant seeks summary judgment as to both of Plaintiff's Counts because, in its view, all the alleged defects have been repaired. Defendant argues that it repaired the defects promptly after it first received "direct" notice of the same from Plaintiff in January of 2006. Specifically, Defendant cites a January 22, 2006 letter from Plaintiff in which he acknowledges that the alleged defects had been repaired and that no additional repairs were necessary. In his deposition, however, Plaintiff states that the January 22, 2006 letter was possibly sent by mistake and that the statements made therein were premature. Elsewhere in his deposition, Plaintiff stated that several of the defects still existed. Plaintiff cites a continuing problem with the boat's battery charger, a broken volt meter, and a crack in the boat's hull that was not adequately mended. In addition, Plaintiff argues that even if the defects are, in fact, cured, Defendant still breached the terms of its written warranty by failing to perform the repairs in a reasonable amount of time. Each of these issues – whether the defects are cured and, if so, whether they were cured within a reasonable amount of time – is a disputed issue of material fact. Summary judgment on these disputed issues of fact is inappropriate.

ORDERED that Defendant's Motion for Summary Judgment is GRANTED in part and DENIED in part, as provided above.

DONE AND ORDERED in Chambers, Miami, Florida, on June 14, 2007.

_____
PAUL C. HUCK
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Magistrate Judge Simonton
All counsel of record